Excuse me. I'm sorry, counsel. I was speaking with my colleague. I didn't hear you. I apologize. I apologize. Last week, I sent a letter to the court saying that I wanted to send additional authority. And the court advised me that if I'm not going to do this, bring three copies of the copy from Mr. DuPree. And that you want it to be real in advance. I had both of your eyes on the copy of the letter. We did. I know. I didn't get it. I didn't hear. We got it just now. Do you have copies of the opinion for the court? I do. Okay. Deliver them. All right. If you want to take one second and give them to our bailiff, he'll get copies. And you gave counsel copies, you said also. Okay. Thank you. Thank you. Because I can't communicate directly with the members of the court, I gave it to the clerk's office. Okay. Thank you, Mr. Stiglitz. Thank you very much. Yes, Your Honor. Okay. I think we're ready to begin. Mr. Gerke. Good morning. Go ahead. Please, the court. Your Honors, this is a weak identification case where even the state's brief admits that its two key eyewitness testimonies were, quote, naturally suspect and, quote, less than certain. Yet a trial, Your Honors, the state was permitted to unfairly bolster this weak identification with witness Stephen Knowles' prior consistent statements, despite the fact that those statements were made after he had already developed a motive to lie. And yet, appellate counsel did not raise this issue on direct appeal. In addition, Your Honors, trial counsel failed to present testimony from the third robbery victim in this case who could not identify my client in a photo lineup and who actually identified someone who was not my client in a second photo lineup. And for those reasons, Your Honors, I'm going to respectfully ask that this court find that my client's post-conviction petition made substantial showing that his right to effect a trial on appellate counsel were violated. As to the first issue, Your Honors, appellate counsel was ineffective in this case for failing to challenge the use of Mr. Stephen Knowles' prior consistent statements, which were used by the state to corroborate his weak identification testimony. The prior consistent statements are only admissible in two circumstances. The first is if there's a charge that the witness' testimony was reasonably fabricated. The second is when there's a charge that the witness' testimony was motivated by an improper motive to testify falsely. So you're submitting here that the motive to testify falsely occurred at the time he was in the interrogation. Correct, Your Honor. Our contention is that the motive to testify falsely was the witness' motive to obtain leniency from the police, to deflect blame from himself. And that same motive existed from the moment he identified my client to the police, existed at the time he made the plea agreement, and existed at the time he testified at trial. But he said he was not, he wouldn't have taken any deal right then. He waited. He said he wasn't guilty and he wasn't going to accept any plea agreement at the time he spoke with the police. Isn't that what the record reflects? I don't recall if he did say that, Your Honor. But even if he did, Your Honor, the record does reflect that he was facing intense pressure from the police to make an identification of my client. It's very clear, I think, from the record that he wanted to obtain leniency from the police. And I think that the fact that, or he wanted to obtain leniency in exchange for making identification. I think the fact that he actually, that promise of leniency made by the police that was actually fulfilled by the fact that he actually received a plea agreement shows that he had the same exact motive. Is it relevant that time lapsed between the time of the statement to the police and the time at which he pled and what went on in between that time, even in the court system? From the time he got into the system, got out of the hands of the police, into the system, there was a substantial time period between the time he sat and the time that he actually entered a plea. I don't think so, Your Honor. I don't think that time period matters insofar as we're talking about his motive. I think it would be odd to say that he identified my client to the police because he was motivated to obtain leniency, but that he somehow had a new or different motive when he agreed to testify and identify my client at trial in exchange for a plea agreement. Well, what is there in the record that indicates he wanted to obtain leniency then? I mean, he denied at first when he was being questioned that he was involved with this or that he knew who was involved, and it was only at the very end that he indicated that perhaps he recognized the defendant's voice. But how does that? Let me have you answer your question, Your Honor. Sure. Well, the record in this case shows that after he identified my client as the gunman at trial, defense counsel elicited a lot of information from both the defendant and the officer that interrogated him, particularly that the defendant was treated as a suspect in this crime from the very beginning, that the police, when interrogating this person, repeatedly threatened him with a long amount of jail time, specifically saying that he was a big fish and needed to become a small fish, needed to shine the light on someone else, that he would take the fall or take the weight for this case unless he made an identification. And the police actually specifically violated this witness's constitutional rights. When this witness asked for an attorney, he became upset and asked for an attorney, but police, instead of ending the conversation, showed him a warrant indicating all the charges he would face. They told him how high his bond would be, and they told him that, excuse me, and also told him that for the first time, if he wasn't going home, that he'd be spending the night in jail. And then after that, he was offered promises of leniency in this case. He was told that, or strong suggestions of leniency in this case. He was told that, the officer told him that he would, quote, help him in the charges. And this is the officer's admission to saying this. He told him that he would help him in the charges if he made an identification. He was told that he would go to the bat with the state's attorney if he made an identification and told that he might not have to serve jail time. He might even get an eye bond if he cooperated to make an identification. In addition to these threats and promises of leniency, Mr. Knoll was specifically pressured to identify my client specifically. He indicated that it was his impression that Mr. Cooper wanted him to identify my client from the very beginning and would not accept any other identification. And the record does show that when Mr. Knoll tried to suggest that someone taller than my client might have been the gunman, Mr. Cooper kind of shut that down. And Mr. Cooper himself admitted that he told Knoll during the interrogation multiple times that the gunman was Dupree. So he's interrogating this person. He's telling him who the officer believes is the gunman. And then Mr. Knoll ultimately asked, who do I have to point out? And the officer said that he was a smart guy. And ultimately, you're right, Your Honor, Mr. Knoll did identify my client by voice. And so what this shows, Your Honor, is that counsel was attacking the credibility of this witness by showing that he was pressuring him to identify my client so that he wouldn't have to serve jail time, so that he would obtain these promises and offers of leniency from the police. And ultimately, the counsel further showed that those promises were actually fulfilled in this case when he got a plea agreement where his charges were dropped from, I don't recall whether it was aggravated robbery or armed robbery, but they were dropped from one of those charges all the way down to theft and no further jail time. He got probation. And Mr. Knoll indicated himself that he believed that if he did not identify my client again at trial like he did to the police, that this plea agreement would go away and that he'd be fixing up the old charges again. So I think that's a very clear indication in this case, or at least that's the charge, that counsel's cross-examination leveled against this witness was the fact that he wanted a leniency from the police. He felt pressure to identify my client and that he wanted to get some kind of benefit out of this. He wanted to get the best benefit possible from the state. Yes, sir. And can you distinguish ANSAC from the facts in this case? Absolutely. The issue in ANSAC was whether a prior statement of identification could be used to rehabilitate a witness when they're charged with a motive to testify falsely versus when they're charged with a motive to recently fabricate their story. And in that case, the witness, if I'm remembering correctly, the defense counsel charged the witness with being motivated to testify falsely by the fact that this witness had recently been broken up with by the defendant that had recently ended their relationship. So that was a motive to testify falsely. The counsel also leveled a different charge against this witness by insinuating that she had never given her story before and she had made it up on the eve of trial. And the court and the second district found that even if she had a motive to testify falsely, they're allowed to rebut that charge that she had recently fabricated her testimony by showing that she had actually made the statement before. So in that case, there was a clear distinction between the motive to testify falsely and the charge that they had recently made something up on the eve of trial. And that's just not what we have in this case. Your argument is that the motive was there from the very beginning and the trial court didn't. Correct. And in fact, what ANSAC essentially holds is that motive is kind of irrelevant if we're talking about a recent fabrication because the issue of recent fabrication is the timing of the statement. But the trial court in ruling specifically made the comment that his testimony changed or his testimony is what it is because he got a sweetheart deal to flip. And that was during cross-examination. That was brought out. Well, Your Honor, I think the key to remember in this case is that when we're talking about whether there's an improper motive, the question is whether there's actually a different motive. I think that the fact that he actually received a plea agreement when he was promisingly in treatment doesn't show that he has somehow has different motives. You just acknowledged a few minutes ago that he wanted to get a sweetheart deal, right? Correct. He didn't want to get the sweetheart deal until after it's conveyed to him by the state's attorney, correct? He does not receive a plea deal, correct, until it's after he's given to that state's attorney. It's after he makes a statement that said issue that was the trial court allowed. Correct, Your Honor. Well, let me answer that. I mean, you've just answered the question. Well, let me respond. In clearing Graham, the Hamburg-Illinois evidence, it gives an indication of how you evaluate claims or evaluate a charge that a witness's testimony is improperly motivated because they received a plea agreement. And what Graham says is that a prior consistent statement to a police officer can only rebut an improper motive from a plea deal if there were, quote, circumstances indicating that neither a suggestion of a plea bargain or leniency nor a threat by police existed at the time the prior consistent statement was made. So if we're determining whether or not he had an improper motive from this plea deal, we have to look at whether there were any promises or threats made at the time he made the prior consistent statement. And that's exactly what we have here. But how do we have that if we don't have the agreement from the state's attorney? We don't have that here under these facts that I see. Your Honor, we don't have an agreement with the state's attorney at the time he made the original statement. That's correct. But we do have the motivation to obtain leniency. But you have an understanding that if you make this statement, you're going to get a sweetheart deal. That's your argument, right? Correct, Your Honor. My argument is that he was told by the police he would receive leniency if he made an identification. He ultimately received leniency and got a plea deal. And I don't think that that shows that he has different motivations for his identification of my client. I think it shows that he has exactly the same motivation. He received exactly what he was going for. And so I don't think that he has, you know, this isn't a recent fabrication. It's not a new story he's telling. He wanted leniency from the police because he was facing jail time and promised to and told that they would go to bat with the state's attorney for him. Why did counsel even bother cross-examining the defendant regarding the plea bargain if it really had no effect on his testimony? I don't want to say that the plea bargain doesn't have any effect on his testimony, Your Honor. I think it shows a continuation of this exact motivation. I think it would be odd to say that an attorney could only cross-examine a witness on the idea that they made a false statement to the police because they were motivated to testify of leniency, but he would be, you know, precluded from saying that he actually got the leniency he was requesting to identify the client, again, at trial. I think that would be an odd thing to say or risk, you know, these prior consistent statements coming in. You know, talking about at trial, the defense objected at trial but didn't put this brazen decision in the post-plea. Right. We're talking about two statements here. Correct, Your Honor. We're talking about two statements here. One is the handwritten statement, agreeing that he made a handwritten statement, and the other is the video statement. Right. If I'm remembering correctly, the video statement was preserved, but the handwritten statement was not. Maybe it was the other one. Maybe it was the other one, Your Honor. Excuse me. I believe so. So, right. So the prejudice analysis are a little bit different, but, again, we're at the second stage of post-conviction here where we just have to show a substantial showing of a constitutional violation. I think that whether raised as harmless error or as plain error under the closely balanced prong. Now, the third point I believe you made was that trial counsel was ineffective for failing to call Morrison, who would have had exculpatory testimony, but there was no affidavit and no explanation why. Correct? Correct. There was no affidavit in this case, Your Honor. But, again, the Post-Commission Act doesn't require an affidavit. It requires either an affidavit or, quote, records or other evidence to corroborate a claim. And, again, we're at the second stage. Counsel doesn't have subpoena power, so it's unclear from where he tried and failed to get an affidavit from this person, but ultimately it doesn't really matter because, you know, the purpose of the first and second stage is to determine whether the supporting documentation in the petition, there is enough documentation in the petition to corroborate this person's post-commission claim. And here we have a post-commission claim that trial counsel is ineffective for failing to call this third witness who would have failed, who would have testified that he failed to identify my client in a six-person color photo array. And this is the person that reported the crime, and he failed to identify my client in a six-person photo array. And not only did he fail to identify my client when asked, he said that none of the photographs resembled the gunman, and that's according to the police reports that were attached to the petition in this case. And this, Your Honor, he showed a second six-person color photo lineup that did not include Dupree's photo, in which he identified someone who was not my client. He identified someone whose name was Terrell Christor. And when asked whether he was sure of that identification, he said he was almost 100 percent sure. And when asked again, he said he was sure of that choice. So he also repeatedly referred to the gunman being as tall as 6'3", which is, again, 6 inches taller than my client. So in this case, Your Honors, we have extremely weak identification evidence, where the defense counsel's theory was that my client was misidentified. And so this has been extremely strong evidence to add to the State's already very weak evidence in this case. Again, the State's two key witnesses were Kiernan Collins and Stephen Noll. Kiernan Collins indicated that he chose my client's photo out of the photo lineup not because he was the gunman, but because he, quote, most resembled the gunman. He also indicated he was only 70 percent sure of his choice. He indicated that—oh, I'm sorry, Your Honor, I think my time is up. Just finish your sentence. He said that he was only 70 percent sure of his choice, and he couldn't even identify my client before. Okay, you'll have time, Your Honor. Thank you. Mr. Stephens? Good morning, Your Honors. Good morning, sir. The first thing I'd like to talk about is the first point that we made, is that I don't believe that Noll's statements are considered hearsay and really don't come under the prior consistent statement rule. The case that we cited for that is People vs. Temple. Excuse me, you're saying his statement, his testimony that he made a statement to the police is hearsay? Not hearsay. Is not hearsay? Not hearsay. In Temple— And is there—I'm sorry, is there a requirement that it be hearsay? Yes. Temple refers to Tisdell, the Supreme Court case, which was a bit of a watershed in the understanding of that, of this law. And it was, in a sense, Justice Thomas, incorporating the notion of the completeness doctrine. Counsel, I'm sorry. I'm not following you. What is the point that you're making here, please? That you have to test this under Rule 725, ILCS 115-12, which is relating to the substantive admissibility of prior identification. Well, isn't that an exception to the hearsay rule? I'm sorry? Isn't that an exception to the hearsay? Yes. So this is not hearsay. And the discussion of Tisdell and Temple essentially collapsed the two into one conversation. Maybe I didn't make that point clearly enough. I think that that's something that Tisdell does make clear and that Temple related to. Maybe I should leave that to the briefs. What do you make of the timing of the statement? The defense is saying that the timing of the statement, the statement that he made at the time he was giving a confession, if you will, to the police, is the time at which the statement which he was going to curry favor was made versus the time at trial when he was given a favorable plea by the state. I think Judge Sheen's made a good point. Miller initially didn't want to identify anyone. He had denied any involvement, as the record indicates. There was definite, that was brought out, the whole thing was obviously brought out very stringently, completely about the nature of the identification and basically what Noel's credibility was. The defense counsel was very assiduous in his attack on that subject. It was brought out that he did receive a substantial deal for giving his testimony. I think it is a classic ANSAC court sort of case. It's unfortunate. I had intended, to be honest, to be aware of People v. Richardson, which applies ANSAC to a case more similar to this case in which a defendant was, excuse me, a witness was similarly arrested, questioned, handcuffed, and then given a plea deal. And they basically used this. Why didn't you find Richardson before Miller rang? Just a mistake. I apologize to you, Your Honors. I should have. It's a point that this Court has raised in the past. I know. I personally have. You have to refresh your research. I'm sorry? Refreshing research is important. It's not even a matter of refreshing research. It's a 2004 case. I do apologize. How does that support your case, Counsel? It's basically ANSAC, only stronger. Because it is the same motivation. You can't distinguish in a way that I'm not exactly understanding with a defendant distinguishing ANSAC. But here, too, the witness was arrested. So you could say in that case, too, that he had his motivation to testify falsely as soon as he's arrested. That would be true of almost every suspect who's arrested. Exactly. You're participating with someone else, correct? Exactly. As soon as you're arrested, I guess you have a motive to testify falsely. Yeah. You're right. With respect to the other claim of ineffective assistance of counsel, or the fact that the trial counsel wasn't effective for failing Carl Morrison, who would have had exculpatory testimony, was there anything in the record? Did you need an affidavit? Did they need an affidavit? Yes, I did need an affidavit. And was there an affidavit provided? There was no affidavit. NS requires an affidavit. And don't we have a Supreme Court case, People v. Ennis, that indicates that? Precisely. Out of story as far as I'm concerned. I think that's it. Anything else? No, thank you. Thank you very much. Thanks very much. Mr. Garkey? If I may briefly talk about People v. Temple. I think what counsel is trying to say is that if this was a prior statement of identification, it wouldn't matter whether the prior consistent statement rule applies. However, this is not a prior statement of identification in this case. That rule indicates that a statement that is of identification of a person made after perceiving him, there's an exception to the hearsay rule for such statements. However, that phrase has to be more than just actually viewing the person, because that's just personal knowledge that's already required. So it's our position that after perceiving means a statement made contemporaneously made with the actual identification of the person, such as a statement made upon actually seeing the person or seeing them in a lineup or something like that. Not a sit-down interview with the police. That's your point, correct? Correct, Your Honor. In addition, counsel also referenced People v. Tisdale. In that case, it was actually talking about a lineup identification. And the issue in that case was whether statements of identification or statements of non-identification. So seeing a lineup and not being able to identify somebody, whether that qualified under the statute, it found that it did. But, again, that was in the context of actually seeing a person in a lineup, not in response to an interrogation. So I'd just like to distinguish that case. Briefly, Your Honor, this is not a classic ANSAC case. ANSAC made it very clear that we're talking about motive to lie and we're talking about a recent fabrication. They're two completely distinct ideas. So if you have a recent fabrication, motive is irrelevant under ANSAC. So we're not talking about different motivations here if we're talking about ANSAC. And I'd also like to distinguish Richardson. In Richardson, it wasn't just that the person was arrested. In this case, this is not just a mere fact of arrest. Here we have very specific threats. A shocking amount of candor from the officer admitting to things that he told the witness in this case about, you know, prompting him to go to the state attorney for him, threatening him with jail time, violating his constitutional rights. When he asked for a lawyer, he showed him, you know, the bond amount and threatened him with a warrant. So this is just not ñ particularly, it's not a situation ñ in Richardson, there's no promises by the police of leniency. They're ultimately fulfilled with a plea agreement. And regardless, Your Honor, I'd also like to point out that Richardson kind of improperly blurs the line between improper motivation and recent fabrication, which is what we're talking about. We're talking about recent fabrication. We're talking about the timing of the statement. It's just like an ANSAC where that charge was that she had not ñ this witness had not ñ had only come and made up this story for the eve of trial. And that's not the situation here. We don't have a situation where our client ñ I'm sorry, where the witness made up the story on the eve of trial, identified him to the police based on the same improper motivation that he had when he entered the plea agreement and when he testified in this case. And if you think about it, Your Honor, if we're talking about a plea agreement, we're talking about motive. This is a motive issue. If you're saying ñ if counsel is pointing out the circumstances of a plea agreement, they're saying that somebody received a benefit for something. That's not a charge of recent fabrication. And that's what Richardson talks about. Richardson does not talk about different motivations. It talks about ñ it indicated in that case that the plea agreement was a recent fabrication, which I think is incorrect because we're talking about a plea agreement. We're talking about a benefit somebody received. So we're talking about their motive for identifying that person. At the time of the statement. We're talking about their motive for identifying the person. And, again, when we're talking about that, as we know from Graham and from a different case called Lambert, the proper analysis, when you're determining whether someone has an improper motive for receiving a plea agreement, the key is to look to whether at the time of the prior consistent statement there are any insinuations of leniency or threats made. And here we have that in this case. Now, if there are any further questions on this issue, Your Honor. What are you asking us to do? Just reverse and remand for an evidentiary hearing to flesh out these issues. At Stage 3. At Stage 3, correct, Your Honor. Thank you very much, counsel. Thank you, Your Honor. The Court will take this matter under advisement and render a decision in due course. We stand at recess until the next case. Thank you.